# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5771 | **DATE** | 1/7/2003 |
| **CASE TITLE** | Sears Roebuck and Co. vs. Emerson Electric Co. | | |

MOTION:   [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants Emerson's motions to dismiss (8-1 and 20-1) as to Counts 1, 2, 3 and 14 of the amended complaint. The motions are otherwise denied. Sears has leave to file a further amended complaint on or before 1/22/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 0 9 2003 | |
| | Notified counsel by telephone. | | date docketed | 28 |
| ✓ | Docketing to mail notices. | | ALR | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| OR | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials |

U.S. DISTRICT COURT
CLERK
03 JAN -8 PM 4:03
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | | |
|---|---|---|
| SEARS ROEBUCK AND CO. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 02 C 5771 |
| | ) | |
| EMERSON ELECTRIC CO. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Sears Roebuck and Co. has sued its former power tool supplier, Emerson Electric Co., for

violations of the Racketeer Influenced and Corrupt Organizations Act, breach of contract, fraud, civil

conspiracy, trade secret misappropriation, and other state law violations arising from Emerson's alleged

conduct following the termination of the parties' 30-year contractual relationship. The case is before

the Court on Emerson's motion to dismiss.

## FACTUAL BACKGROUND

From 1968 through 1997, Emerson and Sears were parties to a supply contract under which

Emerson manufactured power tools at a plant in Paris, Tennessee that Sears then purchased and sold at

retail under the Craftsman brand name. Under the contract, Sears purchased manufacturing equipment

("tooling") for the Paris plant. The contract provided generally that Sears would retain ownership of the

tooling, but it contemplated a series of separate agreements to govern each tooling acquisition that

became necessary throughout the contract term. Each of these later tooling agreements provided that

28

"[t]he tooling shall remain the personal property of Sears at all times during this agreement," and instructed that Emerson "shall not use the tooling for any purpose other than the manufacture of goods for Sears, without Sears' prior written approval." Complaint, ¶10.

On June 30, 1997, Sears terminated its contract with Emerson. Emerson offered to purchase certain tooling remaining at the Paris plant, but Sears refused. On October 31, 1997, the parties entered a termination agreement that further defined Emerson's rights relative to Sears' tooling. That agreement states that "Emerson hereby warrants and represents to Sears that neither Emerson nor anyone acting on its behalf (i) has used the tooling, dies, patterns, molds, drawings and designs ... purchased or paid for, in whole or in part, by Sears under the Tooling Agreements entered into between Emerson and Sears ... to produce new Tooling for Emerson or (ii) has used the Tooling to produce any products sold or offered for sale to any party other than Sears." Complaint, ¶14. On a number of occasions after the execution of the termination agreement, Emerson reaffirmed this guarantee, stating to Sears that it had not used and would not use Sears' drawings or tooling to manufacture products for Sears' competitors. Complaint, ¶15.

During the spring of 1998, Sears and Emerson began discussing Sears' plans to take possession of its tooling. At that time, Emerson developed a list of Sears-owned tooling at the Paris plant. Sears responded skeptically to the contents of the list, questioning whether Emerson had provided a full and accurate inventory of its property. Thereafter, Sears requested an audit of the Paris plant, and Emerson agreed. Accompanied by personnel from the accounting firm of Deloitte and Touche, Sears representatives traveled to the Paris plant to conduct their own inventory of the tooling in Emerson's possession.

2

Sears and Emerson offer dramatically different versions of the events that unfolded during and after Sears' audit. For purposes of this Rule 12(b)(6) motion, however, we will focus on the narrative offered by Sears' well-pleaded factual allegations. *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). According to Sears, Emerson erected a series of hurdles to prevent it from conducting an effective and comprehensive inventory of its tooling. First, Sears alleges that its representatives were forced to sign a confidentiality agreement as a condition of the audit. The terms of this agreement, Sears claims, limited the number of persons who could conduct the audit, precluded the use of cameras, and forced Sears' auditors to perform its tasks during non-production hours in the evening and early morning. Sears also asserts that Emerson's employees attempted to intimidate the auditors and made false or misleading statements about the location of some of Sears' property. Further, Sears claims that Emerson concealed a significant amount of its tooling in an abandoned shirt factory and falsely presented some of the equipment stored in the factory as scrap material. As a result of these tactics, Sears contends, it was unable to locate and account for all of its tooling.

In the spring of 1999, Sears made efforts to take possession of its tooling from Emerson. According to the pleadings, Sears hired State Line Metals, Inc., a Tennessee scrap dealer, to take possession of and disable some of the tooling. Sears claims that as a condition of payment, State Line agreed not to resell the tooling to Emerson. Pursuant to the agreement, State Line retrieved the tooling from Emerson's warehouse. But not all of the equipment was disabled. Instead, State Line sold some of the tooling to Q.C. Recycling Inc., which Sears claims was a "straw purchaser" enlisted by Emerson that in turn resold the tooling to Emerson. Sears claims that Emerson has since used the tooling to

3

manufacture power tools for The Home Depot, one of Sears' competitors. As a result of this series of transactions, Sears alleges, Emerson was able to circumvent Sears' efforts to prevent Emerson from acquiring and exploiting its manufacturing equipment.

By Sears' account, Emerson used similar tactics to acquire a special grinding machine, originally purchased for the Paris plant, that Sears sought to prevent Emerson from using following the termination of the contract. Sears hired Weldon F. Stump and Company, a used equipment broker, to purchase and resell the grinder, allegedly on the condition that Stump would not resell to Emerson. According to the complaint, however, Emerson hired DRF Montrex, a straw purchaser, to acquire title to the grinder, and Emerson has since used the grinder to manufacture tools for Home Depot.

On August 13, 2002, Sears filed a twelve-count complaint against Emerson in this Court. The complaint alleged civil RICO violations, common law fraud, breach of contract, tortious interference with contract, inducement to breach contract, conversion, unjust enrichment, and violation of the Tennessee Trade Secrets Act. Sears also asked for a declaratory judgment that it is excused from making any outstanding payments under its tooling agreements with Emerson. On September 20, 2002, Emerson moved to dismiss each count of the complaint except Sears' claim for breach of contract and its request for a declaratory judgment. On October 16, 2002, Sears filed an amended complaint, striking its claim under the Tennessee Trade Secrets Act and adding claims for common law trade secret misappropriation, civil conspiracy, and violation of the Tennessee Consumer Protection Act. On November 14, 2002, Emerson filed a second motion, seeking to dismiss each of the new claims raised in Sears' amended complaint. We now consider both of Emerson's motions to dismiss.

## DISCUSSION

When considering a motion to dismiss, the Court reads the complaint liberally, granting the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *First Ins. Funding Corp. v. Federal Ins. Co.,* 284 F.3d 799, 804 (7th Cir. 2002). In support of its motions, Emerson argues that Counts 1-10, 13, and 14 of Sears' amended complaint (RICO violations, fraud, tortious interference, inducement to breach contract, conversion, unjust enrichment, trade secret misappropriation, civil conspiracy, Tennessee Consumer Protection Act) fail to state claims upon which relief may be granted. In addition, Emerson argues that Sears has not alleged fraud with the requisite particularity (Count 3) and that it is time-barred from asserting a claim under the TCPA (Count 14).

## A.    Counts 1 and 2 (RICO)[1]

In Counts 1 and 2, Sears alleges that Emerson violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. Specifically, Sears alleges that Emerson, along with Q.C. Recycling, State Line Metals, Inc., and DRF Montrex, acting as an "association in fact" enterprise, planned and executed a series of schemes to deprive Sears of tooling, intellectual property, and competitive advantages. Complaint, ¶¶ 43-51. Emerson argues that Sears has failed to allege adequately several of the requisite elements of a RICO claim.

In Count 1, Sears asserts a RICO conspiracy claim under 18 U.S.C. § 1962(d). In Count 2,

---

[1] We refer to each count as numbered and described in Sears amended complaint.

Sears asserts a substantive RICO claim under 18 U.S.C. § 1962(c). To state a claim under 18 U.S.C. §1962(c), Sears must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985); *Slaney v. Int'l Amateur Athletic Federation,* 244 F.3d 580, 597 (7th Cir. 2001). Emerson argues that Sears' allegations fail to set forth elements 2, 3 and 4. In considering Emerson's arguments, we accept as true all well-pleaded factual allegations and construe all inferences in the light most favorable to Sears. *Thompson,* 300 F.3d at 753.

1.    Racketeering Activity

Sears' substantive RICO claim must include allegations that Emerson engaged in racketeering activity. Specifically, Sears must plead at least two valid RICO "predicate acts." *See Slaney,* 244 F.3d at 599. Sears partially satisfies this burden by pleading nine instances of mail and wire fraud. *See* Complaint, ¶¶55-69. As Emerson points out, however, Sears must allege that each of these acts is tied to some "scheme or artifice to defraud." *See Reynolds v. East Dyer Development Company,* 882 F.2d 1249, 1251 (7th Cir. 1989).

There is no doubt that Sears sufficiently alleges Emerson's involvement in a scheme to defraud. The complaint alleges that Emerson, with assistance from two straw purchasers, sought to "obtain tooling and machines purchased by Sears which it would not lawfully be able to obtain for use in creating product to sell to Sears' competitor." Complaint, ¶49. Sears asserts that Emerson and its alleged partners concealed information and made a series of false representations calculated to carry out its objectives. For example, Sears alleges that Emerson concealed Sears' equipment and frustrated its attempts to conduct an inventory at the Paris plant. Complaint, ¶¶18-24. Sears also alleges that

6

Emerson marked and arranged some of the tooling before it left the Paris plant so that a straw purchaser could retrieve it more easily. Complaint, ¶¶27-33. Moreover, Sears alleges that Emerson paid its straw purchasers over $300,000 to misrepresent themselves or to interfere directly with Sears' contractual safeguards. Complaint, ¶¶59-65. We also note that various steps of the scheme alleged by Sears are linked directly to acts of wire or mail fraud. For instance, Sears pleads specific dates on which it alleges that Emerson faxed purchase orders to Q.C. Recycling and DRF Montrex. Sears also identifies mailings it alleges were sent between Emerson and DRF Montrex effecting their plan to purchase Sears' grinding machine.

Despite these detailed allegations, Emerson contends that Sears never identifies activity tantamount to fraud. Emerson argues that a racketeering "scheme to defraud" is narrowly defined, and requires a plaintiff to allege reasonable reliance on specific misrepresentations. We acknowledge that "not all conduct which strikes a court as sharp dealing or unethical conduct is a 'scheme or artifice to defraud.'" *Reynolds*, 882 F.2d at 1252. However, causation and intent–not reliance–are required to plead RICO fraud. *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992); *United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir. 1991)("the appropriate inquiry is whether [the defendant] possessed the intent to defraud"). We believe that Sears has adequately alleged Emerson's intent to defraud and that Emerson's scheme caused its injuries. The complaint describes misrepresentations and concealment efforts employed by Emerson to retain or regain possession of equipment that Sears refused to sell and that it contracted to keep Emerson from using. Moreover, Sears claims that this scheme caused it economic damage by allowing a competitor to enter the market faster and at a lower cost than it could have otherwise. We believe that Sears has properly alleged a

7

scheme to defraud and has thus alleged the "racketeering conduct" essential to its §1962(c) claim.

2.     RICO Pattern

Emerson next argues that even if Sears has properly alleged racketeering activity, it has failed to identify a pattern of activity sufficient to state a RICO violation. To plead a pattern of racketeering activity, a RICO plaintiff must allege a series of predicate acts of racketeering that show "continuity plus relationship." *Sedima,* 473 U.S. at 496. In the Seventh Circuit, courts examine four factors to identify a RICO pattern: (1) the number and variety of predicate acts and length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir. 1986). In order to demonstrate a pattern over a closed period, where no continuing threat of racketeering activity is expressly alleged, a plaintiff must identify a "'series of related predicates extending over a substantial period of time.'" *Vicom v. Harbridge Merchant Services, Inc.,* 20 F.3d 771 (7th Cir. 1994) (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 242 (1989)).

Emerson argues that Sears has failed to allege a series of racketeering acts sufficient to show continuity. It further contends that the *Morgan* factors weigh in its favor, as Sears' pleadings outline a single overall scheme to defraud, with one basic injury to one victim. The Seventh Circuit, however, has emphasized that the duration of racketeering activity is the crucial element for discerning a RICO pattern, especially in a closed-ended, single-scheme claim. *See Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1024 (7th Cir. 1992) ("duration is perhaps the closest thing we have to a bright-line continuity test"). Though particularly short-lived single victim schemes have failed to show the continuity necessary to demonstrate a pattern, *see Hartz v. Friedman,* 919 F.2d 469, 474 (7th Cir.

1990) (eighteen months); *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 782 (7th Cir. 1994) (nine months); *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 922 (7th Cir. 1992) (eight months), longer schemes have survived judicial scrutiny. *See United States v. Stodola*, 953 F.2d 266, 270 (7th Cir. 1992) (twenty months). Sears has alleged that Emerson and others engaged in racketeering activity from at least September 1997, when Emerson allegedly produced a fraudulent list of tooling, through August 2000, when Emerson last assured Sears that it had not used its tooling to compete. Given its three year duration, we cannot say that the scheme alleged fails to satisfy, for purposes of a motion to dismiss, the standards for pleading a pattern.

### 3. RICO Enterprise

On the other hand, we do not think Sears has adequately alleged a RICO enterprise. Sears alleges an "association in fact" enterprise, which is defined by statute as a "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Though an informal group may constitute an enterprise, Sears must describe an "'ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision making.'" *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000) (quoting *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990)). Moreover, the enterprise alleged must be "an organization with a structure and goals separate from the predicate acts themselves." *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991). If the "enterprise" is just a name for the fraudulent acts alleged, or for the agreement to commit these acts, then it is not an enterprise within the meaning of the statute.

Sears has alleged that Emerson, its "Special Products Division," Q.C. Recycling, State Line

Metals, Inc., and DRF Montrex formed an enterprise. Complaint, ¶43. But the description of the racketeering scheme Sears' alleges undermines the sufficiency of this claim. Sears states that "[m]embers of the enterprise would and did agree to the commission of multiple acts of racketeering, in the conduct of the affairs of the enterprise," Complaint, ¶44. The only "affairs of the enterprise" described, however, are the very predicate acts that Sears alleges have caused its injuries. Sears does not suggest that the "enterprise" had its own structure or any goals beyond the commission of the specific predicate acts involved here; DRF Montrex and Q.C. Recycling were simply entities that Emerson recruited to carry out its dirty work. Though Sears has sufficiently described a conspiracy led by Emerson, it has not adequately alleged the existence of an enterprise. *See Bachman v. Bear, Stearns & Co.,* 178 F.3d 930, 932 (7th Cir. 1999) (dismissing RICO claim for failure to allege enterprise where fraud was committed by four persons over several years, and explaining that group conspiracy to commit fraud without more does not constitute RICO violation).

### 4.     RICO Conspiracy

Because Sears has failed adequately to allege a RICO enterprise, it does not state a claim for RICO conspiracy under 18 U.S.C. § 1962(c). *See Stachon,* 229 F.3d 673, 677 (7th Cir. 2000).

## B.     Count 3 (Fraud)

Emerson moves to dismiss Count Three under Rules 12(b)(6) and 9(b), arguing that Sears has failed to state a claim for fraud or has at least failed to plead the circumstances of the fraud with the necessary particularity. To state a claim for fraud, a plaintiff must allege (1) that the defendant intentionally misrepresented a material fact or produced a false impression in order to mislead another, and (2) that the plaintiff suffered an injury caused by reasonable reliance on the representation. *Brown*

10

*v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66-67 (Tenn. 2001).[2] Emerson argues that Sears has failed to identify material misrepresentations with specificity. It also contends that Sears has not alleged reasonable reliance. More generally, Emerson characterizes Sears' grievances as breach of contract allegations; it insists that Sears cannot seek recovery in tort. We find that Sears has stated a claim for fraud but agree with Emerson that Sears must plead the circumstances of the fraud with greater particularity.

Sears' complaint sets forth a series of distinct representations that it alleges Emerson made to gain title to Sears' tooling, and to conceal its efforts to do so. Complaint, ¶71. For example, Sears alleges:

> In April 1999, Emerson told Sears and Sears' agents that the tooling made ready for disabling by State Line was not organized in any particular order and that spray paint marks on the tools had no particular significance, when in fact the tools were organized and spray-painted to identify them so that they could be sold to a straw purchaser, Q.C. Recycling, and back to Emerson.

Complaint, ¶71(f). Sears also alleges that in April 1998, Emerson told Sears that it would have to close its Paris plant when it was actually planning to operate the plant for a competitor, Complaint, ¶71(e), and that in September 2000, Emerson told Sears that it had obtained its tooling in an arm's length transaction, when in fact it bought the tooling through straw purchasers. Complaint, ¶71(h). Sears alleges that these statements and others were false, and were made "for the purpose of inducing Sears to act or refrain from acting." Complaint, ¶73. Sears also pleads reasonable reliance on these misrepresentations. Complaint, ¶74. It is clear that the complaint covers each of the elements

---

[2] The parties appear to agree that Tennessee law applies to Sears' state law claims. Because the issue is not disputed in their briefs, we refer to Tennessee law to supply the substantive elements of these claims.

necessary to establish fraud.

We reject Emerson's argument that Sears has miscast a breach of contract claim as a cause of action for fraud. A simple claim that Emerson has broken its promise not to use Sears' tooling to benefit a competitor would, in fact, be nothing more than a breach of contract claim. But the facts alleged reveal Emerson's elaborate efforts to conceal its breach of contract and to prevent Sears from responding to the breach effectively. This element of deception allows Sears to state a claim for fraud. *See Rawlings v. The John Hancock Mutual Life Ins. Co.*, 78 S.W.3d 291 (Tenn. App. 2001) (explaining that basic ingredient of fraud claim is deception); *see also Trans Union LLC v. Credit Research Inc.*, No. 00 C 3885, 2001 WL 648953, at *7 (N.D. Ill. June 4, 2001) ("If a party makes false statements in an attempt to conceal a breach, that can be fraud.").

Sears must, however, plead the circumstances constituting the alleged fraud with some greater specificity. To satisfy the requirements of Rule 9(b), Sears must plead the "who" of the alleged fraud along with the "what," "where," and "when" that now appears in its complaint. *See Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Though Sears sets forth the gist of certain alleged representations, and provides the specific calendar months in which they were made, it fails to identify the individuals at Emerson responsible for making the alleged statements. We therefore dismiss Count 3 with leave to file a further amended complaint within 14 days.

## C. Counts 4-7 (Tortious Interference)

Counts 4-7 focus on Emerson's alleged interference with Sears' contracts with Weldon Stump and State Line Metals to resell and dispose of its tooling. Counts 4 and 5 allege common law claims for tortious interference with contract. Counts 6 and 7 allege Tennessee state law claims for inducement to

12

breach contract. The elements required for pleading these claims are identical. *Givens v. Mullikin*, 75 S.W.3d 383, 405 (Tenn. 2002). A plaintiff must allege that (1) a legal contract existed; (2) the defendant was aware of the contract; (3) the defendant intended to induce a breach of that contract; (4) the defendant acted with malice; (5) a breach of contract occurred; (6) the breach was a proximate result of the defendant's conduct; and (7) the breach injured the plaintiff. *Id.* Emerson offers three reasons why Sears' contract interference claims should be dismissed. It contends that Sears has not alleged a breach of contract, that it lacks standing to bring the claims, and that it has failed to alleged that the contracts were in writing and therefore legally enforceable. None of these arguments convince us that dismissal is proper.

Emerson argues that Sears has not pleaded breach of contract because the complaint alleges only promises not to sell to Emerson and "says nothing as to any promise they made to impose similar conditions on subsequent resale." Mot. to Dismiss at 13. This argument misses the mark, however, because Sears alleges that the "subsequent resale" was a sham. The circumstances alleged by Sears indicate that a breach of contract took place when Emerson's straw purchasers gained title to the tooling. Moreover, Emerson misreads the complaint; Sears specifically alleges that both Stump and State Line promised not to resell the tooling either "directly or indirectly" to Emerson. Complaint, ¶¶78, 85.

Emerson next argues that Sears lacks standing to sue for tortious interference, in that Sears was not a party to the relevant contracts with Stump and State Line. It points to language in the complaint that states that "Sears' agent contracted with Weldon F. Stump," and that "Sears, through its agent, Ryobi Motor Products Corp. ... contracted with State Line Metals." Complaint, ¶¶25, 35. As Sears

points out however, a party is free to enter into a contract through its agent, provided that it complies with certain principles of agency law. *See, e.g., Webber v. State Farm Mut. Automobile Ins. Co.,* 49 S.W.3d 265 (Tenn. 2001). Though Sears will have to generate the details of its contracts with Stump and State Line through discovery, as a matter of pleading, it is sufficient for Sears to allege generally that it entered into these contracts through its agent. *See Higgs v. Carter,* 286 F.3d 437, 439 (7th Cir. 2002) ("[T]he federal rules require ... only that a complaint state a claim, not that it plead the facts that if true would establish ... that the claim was valid).

Finally, Emerson argues that Sears has not alleged the existence of a legally enforceable contract, in that the complaint fails to allege that Sears' contracts with Stump and State Line were in writing. Emerson seems to be arguing that a tortious interference claim requires a plaintiff to allege that the contract in question does not violate the statute of frauds. As Sears points out, however, this argument misconceives the federal pleading requirements and misstates the law. The statute of frauds is an affirmative defense to breach of contract, not a substantive element of a plaintiff's claim. *Hixson v. Stickley,* 493 S.W.2d 471 (Tenn. 1973) (statute of frauds is an affirmative defense to be pled in defendant's answer and not in plaintiff's complaint). Even were it otherwise, a plaintiff is allowed to plead its claims generally, and "need not allege each element of a cause of action," *Jet Inc. v. Shell Oil Inc.,* No. 02 C 2289, 2002 WL 31641627, at *8 (N.D. Ill. Nov. 22, 2002) (internal quotation marks omitted).

## D. Counts 8 and 9 (Conversion and Unjust Enrichment)

In Count 8, Sears alleges conversion of both the tooling that Emerson obtained from Stump and

14

State Line and the tooling and drawings that Sears claims Emerson wrongfully retained during and after the contractual relationship ended. Emerson moves to dismiss this claim as to both categories of property, contending (1) that Sears pleaded no current legal right in the tooling that Emerson obtained from Stump and State Line, and (2) that Sears has released any claim related to property that Emerson might have misappropriated during the period that the contract was in force. To state a claim for conversion, a plaintiff must allege that the defendant appropriated property to its own use and benefit, by the exercise of dominion over it, in defiance of the plaintiff's right. *Barger v. Webb,* 391 S.W.2d 664, 665, 216 Tenn. 275, 278 (Tenn. 1965). Given the facts alleged in the complaint, we agree that Sears cannot claim conversion with respect to the tooling Emerson purchased through Stump and State Line. A party cannot recover for conversion of property, the title to which is held by another, *AHCI v. Short,* 878 S.W.2d 112, 144 (Tenn. App. 1993), and Sears relinquished its legal title to that tooling when it was sold.

To the extent that Sears' conversion claim involves equipment and intellectual property that Emerson allegedly wrongfully disposed of prior to the parties' termination agreement, its claim is sufficient. Emerson's argument based on the release clause in the termination agreement is unavailing, at least for purposes of a motion to dismiss. The agreement indicates that Sears is barred from claiming any breach, occurring before the execution of the termination agreement, and arising out of the parties' "1968 Agreement or any other agreement or duty between the parties relating to Emerson's manufacture or sale of the Products to Sears." Complaint, Ex. 3, p.4. But it is unclear to the Court whether that language bars the claim that Emerson stole or misappropriated Sears' property in the context of the parties' contractual relationship. On a motion to dismiss we are bound to construe

15

ambiguities in the plaintiff's favor. *See Thompson*, 300 F.3d at 753. Emerson is entitled to raise the release as a defense, but the release does not entitle it to dismissal of the complaint.

The same basic analysis applies to Sears' claim in Count 9 for unjust enrichment. That claim requires Sears to allege (1) a benefit conferred upon the defendant; (2) appreciation by the defendant of the benefit; and (3) acceptance of the benefit without payment of its value. *Ergon, Inc. v. Amoco Oil Co.*, 966 F. Supp. 577, 586 (W.D. Tenn. 1997) (citing *Paschall's Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150, 154-155 (Tenn. 1966)). The complaint alleges that Emerson will be unjustly enriched if it is permitted to retain ownership of "the drawings and tooling." Complaint, ¶101. We agree with Emerson that Sears' unjust enrichment claim cannot extend to the tooling Emerson obtained through Stump and State Line, as Emerson actually furnished consideration for that equipment, and Sears has not alleged the consideration's insufficiency. *See Chase Manhattan Bank, N.A. v. CVE, Inc.*, 206 F. Supp. 2d 900 (M.D. Tenn. 2002). As to the "tooling and drawings" that Sears' claims Emerson wrongfully retained in its Paris plant, Count 9 is sufficient to state a claim for unjust enrichment.

**E.     Count 10 (Trade Secret Misappropriation)**

Emerson next moves to dismiss Sears' common law claim for trade secret misappropriation. To state a claim, Sears must allege (1) the existence of a trade secret that is communicated to the defendant while the defendant is a position of trust and confidence, and (2) use of that information by the defendant to the plaintiff's detriment. *Hickory Specialties, Inc. v. B&L Laboratories, Inc.*, 592 S.W.2d 583 (Tenn. App. 1979). Emerson argues that Sears has not adequately alleged the existence of a trade secret. Alternatively, it contends that Sears cannot claim trade secret protection over the

16

tooling it sold to Stump and State Line because those transactions extinguished Sears' proprietary rights in its secrets and exposed its secrets to the public. We find that Sears has stated a claim for trade secret misappropriation. On the facts alleged, however, this claim cannot extend to any purported trade secrets associated with the grinder sold to Stump and reacquired by Emerson.

First, the complaint adequately sets forth each element necessary to state a claim for trade secret misappropriation. Sears alleges that its tooling and drawings are proprietary trade secrets, Complaint, ¶103, a proposition we must accept as true in a motion to dismiss. *See Thompson,* 300 F.3d at 753. Moreover, Sears alleges that Emerson used those secrets to produce power tools for Sears' competitor without Sears' permission, and despite Sears' efforts to prevent Emerson from doing so. Emerson insists that Sears has offered no proof that its equipment was secret, and it argues that it was entitled by contract to reverse-engineer Sears' tooling. But these arguments are misplaced in a motion to dismiss. Our task is simply to evaluate whether Sears has set forth the elements necessary to plead misappropriation. *See Higgs,* 286 F.3d at 439; *Dade Int'l, Inc. v. Iverson,* 9 F. Supp. 2d 858, 863 (M.D. Tenn. 1998) (finding dismissal inappropriate when plaintiff asserted every element of the tort for misappropriation of trade secrets). To the extent that Sears alleges that Emerson used tooling and designs that it wrongfully retained at its Paris plant to produce tools for Home Depot, it has stated a claim for misappropriation.

Emerson, however, offers a separate argument that Sears' trade secret claim cannot extend to the tooling that it purchased from Stump and State Line. As Emerson points out, "the voluntary disclosure ... of 'any alleged trade secret' as part of a business transaction without reservation or agreement of confidentiality prevents recognition of the information as a trade secret." *Turner v. Great*

*American Opportunities, Inc.*, 716 S.W.2d 40, 44 (Tenn. App. 1986). Sears would not normally be required to plead the existence of a confidentiality agreement as part of its trade secrets claim. But the complaint reveals that Sears sold some of its tooling to third parties, thereby publicly exposing any trade secret value it might have. Complaint, ¶¶25, 35. A plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in the complaint. *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Thus, the complaint must allege some measures taken to secure the confidentiality of any trade secret equipment that Sears sold to Stump and State Line. Sears does allege that its contract with State Line included a promise "to destroy or disable" the tools. Complaint, ¶25. But Sears has pled itself out of court with respect to the grinder it sold to Weldon Stump. The allegations surrounding that contract not only fail to allege the existence of a confidentiality agreement, but in fact reveal that Sears hired Stump to resell the grinder. It is irrelevant that the contract also contained a promise not to sell to Emerson, for a trade secret cannot be kept from a single company, and held open to the rest of the world. Thus, Sears has stated a trade secret misappropriation claim, but not one that extends to the grinder Emerson acquired from Weldon Stump.

## F.    Count 13 (Civil Conspiracy)

In Count 13 of its amended complaint, Sears asserts a claim for civil conspiracy. To state a claim for civil conspiracy, Sears must allege that Emerson acted together with at least one other person acted together to accomplish an unlawful purpose, or to accomplish an otherwise lawful purpose through unlawful means. *Braswell v. Carothers*, 863 S.W.2d 722, 727 (Tenn. App. 1993). Sears must also allege that Emerson and its co-conspirators acted together with a common design, that they committed at least one overt act in furtherance of the conspiracy, and that their actions resulted in injury

18

to Sears. *Id.* Emerson argues that Sears' conspiracy allegations are insufficient in that (1) Sears has failed to plead properly the wrongful conduct underlying the claim, and (2) the facts asserted do not provide enough evidence of an agreement between Emerson and its alleged co-conspirators.

As to its first argument, Emerson correctly notes that Sears' conspiracy claim must rest on some sufficiently pleaded "civil wrong resulting in damage." *Pusser v. Gordon,* 684 S.W.2d 639, 642 (Tenn. App. 1984). To the extent that its claim amounts to an alleged conspiracy to defraud, Sears must satisfy the pleading requirements for the underlying fraud. *See id.* As we have discussed, Sears has not pleaded fraud with the requisite specificity in certain respects. We do not agree with Emerson, however, that this shortcoming provides an adequate ground for dismissal. Construing the language of Count 13 in Sears' favor, we agree with Sears that the wrongful conduct necessary to establish its civil conspiracy allegations is supplied by its properly pleaded claims for fraudulent inducement and tortious interference with contract (Counts 4-7). Sears alleges in Count 13 that Emerson and its co-conspirators, Q.C. Recycling, State Line Metals, Inc., and DRF Montrex "sought to and succeeded in retaining and obtaining Sears' tooling and related intellectual property in violation of the law," causing Sears significant economic damage. *See* Complaint, ¶¶123-132. Bolstered by the matters alleged in Counts 4-7, which outline Emerson and its alleged co-conspirators' efforts improperly to obtain Sears' tooling, Count 13 states a claim for civil conspiracy.

We further reject Emerson's argument that the pleadings fail to provide enough detailed evidence of a conspiracy. Pleading conspiracy simply requires the plaintiff "to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). Sears has satisfied these requirements.

## G.     Count 14 (Tennessee Consumer Protection Act)

Finally, Sears alleges that Emerson's actions as outlined in the complaint "constitute unfair and deceptive acts or trade practices in violation of the Tennessee Consumer Protection Act" ("TCPA"). Complaint, ¶134.  We agree with Emerson that Sears has not stated a claim under the TCPA.

The TCPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," Tenn. St. §47-18-104(a), and authorizes suit by "any person who suffers an ascertainable loss of money or property ..." as a result of such acts or practices.  Tenn. St. §47-18-109(a)(1).  Sears relies on this broad language to seek relief under the Act, characterizing Emerson's efforts to retain and wrongfully obtain its tooling as "unfair and deceptive practices."  This asserted claim, however, ignores the scope of the TCPA.  The Act states that its provisions shall be construed "to protect consumers," and "to encourage and promote the development of fair consumer practices." Tenn. St. §47-18-102(2)(3).  Moreover, the long enumeration of specific "unfair or deceptive acts or practices" that the Act is designed to deter reveals that the Act is concerned with consumer transactions, particularly unfair sales and marketing techniques.  *See* Tenn. St. §47-18-104.[3]  Sears does allege that it was injured by Emerson's deceptive behavior.  But is quite a stretch for it to suggest that its injuries were rooted in an unfair consumer transaction.  Although its relationship with Emerson was based on a supply contract, Sears was not injured as a power tool consumer.  Rather, the pleadings indicate that Sears' injuries arose from Emerson's sharp competitive maneuvers after the

---

[3]  A sample of the deceptive practices enumerated in § 104 includes "[f]alsely passing off goods or services as those of another," "[a]dvertising goods or services with intent not to sell them as advertised," "[r]epresenting that a service, replacement or repair is needed when it is not," and "[c]ausing confusion or misunderstanding with respect to the authority of a salesperson, representative or agent to negotiate the final terms of a consumer transaction." Tenn. St. § 104(b)(1)(9)(13)(14).

20

parties' contract had terminated.

Sears argues that the list of prohibited deceptive practices in § 104 is non-exhaustive, and that the TCPA should be liberally construed to reflect a catch-all provision in that section which prohibits "any other act or practice which is deceptive to the consumer or to any other person." Tenn. St. § 104(b)(27). But this general language must be informed by the range of examples that precedes it. *See, eg., Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994) (explaining that "where general words follow special words which limit the scope of the statute, general words will be construed as applying to things of the same kind or class as those indicated by the preceding special words"). Sears cites no authority, and we have discovered none, that convinces us that Tennessee courts would be willing expand the TCPA to embrace deceptive practices unrelated to consumer transactions or consumer injury. The only court we found to have considered the question refused to apply the Act where the plaintiff's suit was not based on "any type of consumer transaction." *Operations Mgmt. Int'l, Inc. v. Tengasco, Inc.*, 35 F. Supp. 2d 1052, 1058 (E.D. Tenn. 1999).

Sears' reliance on *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920 (Tenn. 1998), is misplaced. The Tennessee Supreme Court in that case extended application of the TCPA to grievances arising out of the acts and practices of insurance companies. *Id.* The suit at issue was clearly rooted in transactions between insurers and their customers. Although the court made reference to the catch-all provision in § 104, it did not read that section to expand the TCPA beyond the field of consumer protection. Rather, it considered the catch-all clause as evidence that consumers could recover for deceptive insurance practices under the Act, notwithstanding the comprehensive regulation scheme in place to govern the insurance industry. *Id.* at 925-926.

## CONCLUSION

For the reasons stated above, the Court grants Emerson's motions to dismiss [docket items 8-1 and 20-1] as to Counts 1, 2, 3 and 14 of the amended complaint. The motions are otherwise denied. Sears has leave to file a further amended complaint on or before January 22, 2003.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 7, 2003